UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAN-LING X.,<br><br>    Petitioner,<br><br>v.<br><br>TODD LYONS, Acting Director, Immigration and Customs Enforcement; SERGIO ALBARRAN, Field Office Director of Enforcement and Removal Operations, San Francisco Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, Attorney General of the United States; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; CHRISTOPHER CHESTNUT, Warden of California City Correctional Facility,<br><br>    Respondents. | No. 1:25-cv-01412-KES-CDB (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 3 |

This habeas action concerns the detention of petitioner Yan-Ling X., a noncitizen who was ordered removed to China in 2020 but was released on an order of supervision after immigration authorities were unable to remove her.[1]  Immigration and Customs Enforcement ("ICE") revoked her release in October 2025, asserting that her removal to China is now imminent.  This matter is before the Court on petitioner's motion for temporary restraining order.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

Doc. 3. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

## I. Background

Petitioner is a forty-four year old citizen of China. Doc. 10-2, Ex. 1. Petitioner asserts that she was subject to China's coercive population control policies and persecution of Christians. Doc. 1 at ¶¶ 22–23. She indicates that she was arrested and detained for participating in religious gatherings and that Chinese government officials forcibly sterilized her. *Id.*

She fled to the United States and crossed the southern border on September 19, 2019. *Id.* ¶ 21; Doc. 10-1, Munoz Decl. at ¶ 6. She was detained upon entry and referred for a credible fear interview with an asylum officer. *See* Doc. 10-1, Munoz Decl. at ¶ 8; Doc 10-4, Ex. 3. She was then placed in removal proceedings and remained in detention. *See* Doc. 10-1, Munoz Decl. at ¶¶ 9–10; Doc. 10-5, Ex. 4. On February 4, 2020, an immigration judge denied her asylum application and ordered her removed from the United States to China. Doc. 10-1, Munoz Decl. at ¶ 11. Petitioner waived her right to appeal. Doc. 10-6, Ex. 5.

On April 13, 2020, ICE released petitioner from detention on an order of supervision. Doc. 10-7, Ex. 6. The regulations that authorize ICE to release a noncitizen who has been ordered removed provide:

> Before making any . . . decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> 1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> 2) The detainee is presently a non-violent person;
>
> 3) The detainee is likely to remain nonviolent if released;
>
> 4) The detainee is not likely to pose a threat to the community following release;
>
> 5) The detainee is not likely to violate the conditions of release; and
>
> 6) The detainee does not pose a significant flight risk if released.

8 C.F.R. § 241.4(e); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate

2

1  Commissioner and district director "must [also] be able to reach the conclusions set forth in
2  paragraph (e) of this section" "[b]efore making any decision to release a detainee").

3        Petitioner lived in the United States continuously for the next five years, and respondents
4  do not dispute petitioner's assertions that she has fully complied with her order of supervision
5  since her release. Doc. 1 at ¶¶ 20, 25; *see* Doc. 10-8, Ex. 7. Petitioner was issued an employment
6  authorization following her release, and she has worked as a chef for the past three-and-a-half
7  years. *See* Doc. 11-1, Chan Decl. at ¶¶ 2, 6. She currently possesses an unexpired employment
8  authorization card that was renewed as recently as April 2025. *See* Doc. 11-1, Chan Decl. at ¶ 6;
9  Doc. 11-1, Ex. 2.

10        On October 2, 2025, petitioner reported for a regularly scheduled check-in, and ICE
11  placed an ankle monitor on her. Doc. 10-1, Munoz Decl. at ¶ 14. Then, on October 14, 2025,
12  ICE revoked her order of supervision and arrested her. *See id.* ¶ 15. ICE provided her with a
13  notice of revocation of release, which states that her order of supervision was revoked because
14  her "case is currently under review by the Government of China for the issuance of a travel
15  document and [her] removal is now imminent." Doc. 10-8, Ex. 7. The notice was signed by
16  Sergio Albarran, the Field Office Director of the San Francisco Field Office of ICE. *Id.*
17  Petitioner is now detained at California City Correctional Facility. *See* Doc. 1 at ¶ 5.

18  **II.     Conversion to a Motion for Preliminary Injunction**

19        When the Court set a briefing schedule on the motion, it ordered the parties to state their
20  position on whether the motion for temporary restraining order should be converted to a motion
21  for preliminary injunction and whether the parties requested a hearing on the motion. Doc. 5.
22  Neither party objected to converting the motion to one for a preliminary injunction or requested a
23  hearing. *See* Docs 10, 11. Given that the standards for issuing a temporary restraining order and
24  a preliminary injunction are the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240
25  F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in
26  opposition, *see* Doc. 10, petitioner's motion is converted to a motion for preliminary injunction.
27  ///
28  ///

3

### III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### IV. Discussion

#### a. Likelihood of Success on the Merits

Although petitioner brings seven separate claims for relief, her arguments boil down to four main points: she argues that there is no significant likelihood that ICE will be able to remove her to China in the reasonably foreseeable future, that the Field Office Director did not have authority to revoke her release, that ICE failed to afford her a prompt interview following her re-detention as required by its regulations and due process, and that the regulations that authorize revocation of release are ultra vires and in excess of ICE's statutory authority. *See* Doc. 2 ¶¶ 48–94; Doc. 3-1 at 10–19.[2]  The Court finds, for the reasons explained below, that petitioner is entitled to relief on the ground that respondents have failed to show a significant likelihood that

---

[2] Petitioner also requested that the Court order respondents not to transfer petitioner outside of California, but that request is not briefed in her motion and is therefore not addressed in this Order.

4

ICE will be able to remove her to China in the reasonably foreseeable future.[3]

### 1. Respondents Fail to Show that Petitioner's Removal is Reasonably Foreseeable Under the Governing Framework.

Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[4] 8 C.F.R. § 241.13(i)(2).

Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), respondents appear to assume that petitioner has the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Doc. 10 at 4–5. *Zadvydas* dealt with a noncitizen who had been detained and never released following a final order of removal. *Zadvydas*, 533 U.S. at 701. In that context, the Supreme Court held that once an alien has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

However, the burden-shifting framework from *Zadvydas* does not apply here. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025). As in *Nguyen*, "[t]his case is about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." *Id.* "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." *Escalante v. Noem*, No. 9:25-CV-

---

[3] Given this finding, the Court need not address petitioner's remaining arguments.

[4] It also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision," 8 C.F.R. § 241.13(i)(1), but respondents do not dispute petitioner's assertion that she has complied with the order of supervision for over five years, *see* Doc. 10.

5

1  00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

2  The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed. *Id.*; *Escalante*, 2025 WL 2206113, at *3 ("After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for . . . those who are re-detained upon revocation of their supervised release." (citing 8 C.F.R. § 241.13)). In *Escalante*, the court noted that:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Escalante*, 2025 WL 2206113, at *3.

Those regulations indicate that, when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." *Escalante*, 2025 WL 2206113, at *3; *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); *Nguyen*, 788 F. Supp. 3d at 150.[5] As the district court in *Escalante* found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due

---

[5] Petitioner made this argument and cited *Escalante* and *Roble* in her motion, *see* Doc. 3-1 at 16–17, but respondents do not address that argument or those authorities, arguing only that the framework from *Zadvydas* applies, *see* Doc. 10.

6

process implications." *Escalante*, 2025 WL 2206113, at *3. Therefore, the Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

The only changed circumstance that respondents identify is that petitioner's case is "under current review by the Government of China for the issuance of a travel document." Doc. 10-8, Ex. 7. The government's notice of revocation of release states:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. . . . [because your] case is under current review by the Government of China for the issuance of a travel document[,] and your removal is now imminent.

Doc. 10-8, Ex. 7. The declaration of deportation officer Robert J. Munoz states that petitioner "was taken into custody due to [these] changed circumstances in her case." Doc. 10-1, Munoz Decl. at ¶ 15.[6]

Respondents fail to explain why China did not issue a travel document in the past or why China is likely to issue a travel document for petitioner in the reasonably foreseeable future. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Respondents do not explain whether the United States and China have a repatriation agreement in place, do not explain whether removals to China are common, do not identify what considerations the Government of China might take into account when deciding whether to issue a travel document, and do not explain whether the Government of China will look favorably upon petitioner's case. *See Liu v. Carter*, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken

---

[6] Respondents also note that petitioner applied for a Chinese passport in September 2025, but they do not explain the significance of this fact or whether there is any indication that China will issue petitioner a passport. *See* Doc. 10 at 6, 8.

7

to make the petitioner's removal more likely). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility that" the designated country of removal "will accept Petitioner at some point . . . is not the same as a significant likelihood that [she] will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025).

The record of this case provides reason to doubt that China will issue a travel document for petitioner in the reasonably foreseeable future. Petitioner was not removed in 2020 or thereafter. Respondents do not explain why ICE has been unable to remove petitioner for over five years since it released her, but it is evidently because ICE was unable to obtain travel documents for her or her removal was otherwise not practicable.[7] "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." *Chun Yat Ma v. Asher*, No. 11-cv-01797-MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Moreover, as recently as April 2, 2025, petitioner was issued an employment authorization card. *See* Doc. 11-1, Chan Decl. at ¶ 6. Under section 1231(a)(7), issuing such employment authorization for an individual ordered removed, like petitioner, is permitted only when the individual cannot be removed or when removal is impractical or contrary to the public interest. That statute provides:

> No alien ordered removed shall be eligible to receive [employment] authorization . . . unless the Attorney General makes a specific finding that—
> (A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or
> (B) the removal of the alien is otherwise impracticable or contrary to the public interest.

---

[7] The regulations that authorize ICE to release a noncitizen following a final order of removal provide that an appropriate official "must conclude that[] . . . [t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest[.]" 8 C.F.R. § 241.4(e)(1); *see also* 8 C.F.R. §§ 241.4(h)(3), (i)(6) (noting that the Executive Associate Commissioner and district director "must be able to reach the conclusions set forth in paragraph (e) of this section" "[b]efore making any decision to release a detainee").

8

8 U.S.C. § 1231(a)(7). Given that authorities renewed petitioner's employment authorization in April 2025, it appears that, at least as of that time, the government determined that petitioner could not be removed to China or that her removal was otherwise impracticable. *See Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *2 (E.D. Cal. Aug. 20, 2025) (noting that the "Chinese government has historically not accepted deportees from the United States"). Respondents fail to explain how the circumstances are different now.[8]

Detention is permissible only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future (or if there was a violation of the order of supervision, which respondents do not allege here). *See* 8 C.F.R. § 241.13(i). ICE re-detained petitioner without making that showing and without complying with the regulation. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954).

Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac*, 2025 WL 1993771, at *5 ("[Because] Petitioner has [] shown it is likely that there is no change in circumstances such that Petitioner will be removed to Vietnam in the reasonably foreseeable future as required by § 241.13(i)(2)[,] . . .

---

[8] Respondents have not attempted to meet their burden by, for example, providing statistics regarding recent removals of Chinese nationals. As the *Nguyen* court pointed out in the context of removals to Vietnam: If the government "submitted 350 requests and Vietnam issued travel documents for 328 individuals, Respondents may very well have shown that removal is significantly likely in the reasonably foreseeable future. On the other hand, if [the government] submitted 3,500 requests and only 328 individuals received travel documents, Respondents would not be able to meet their burden." *Nguyen*, 788 F. Supp. 3d at 151. Respondents do not provide such evidence and have not met their burden to show that there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future.

1  Petitioner has shown a likelihood of success . . . [on his claim] that his re-detainment is unlawful.
2  . . .""). Petitioner is therefore likely to succeed on her claim that her detention is unlawful.

### b. Irreparable Harm

Petitioner also faces irreparable harm absent a preliminary injunction. "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005); *Hoac*, 2025 WL 1993771, at *6 ("The Ninth Circuit has also noted that 'unlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages.'" (quoting *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017)). The Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "the economic burdens imposed on detainees . . . as a result of detention." *Hernandez,* 872 F.3d at 999; *cf. Barker v. Wingo*, 407 U.S. 514, 532-33 (1972) ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness."). Petitioner has now lived in the United States for over five years and has held a job as a chef for over three years pursuant to a valid work authorization. *See* Doc. 11-1, Chan Decl. at ¶ 2. She faces irreparable harm from the loss of that employment and her liberty due to her re-detention. *See Hoac*, 2025 WL 1993771, at *6 (finding irreparable harm when petitioner was at risk of losing employment).

Moreover, petitioner has shown that ICE likely failed to follow the procedures of 8 C.F.R. § 241.13(i)(2), which protect petitioner's due process rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

Petitioner has thus established that she will suffer irreparable harm absent a preliminary injunction.

10

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, it "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.NS.,* 753 F.2d 719, 727 (9th Cir. 1983). In contrast, petitioner faces potentially indefinite detention without this Court's intervention.

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021). "Government expenditure in this case is not in the public interest in light of Petitioner's compliance with [her order of supervision], stable employment, and consistent attendance at scheduled ICE meetings." *Hoac*, 2025 WL 1993771, at *6.

### d. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. The purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025); *see also Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).

///

///

**V.     Conclusion and Order**

Accordingly,

1. Petitioner's motion for a preliminary injunction, Doc. 3, is GRANTED.
2. Respondents are ORDERED to release petitioner immediately.
3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless and until they obtain a travel document for her removal, and unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

IT IS SO ORDERED.

Dated:   November 7, 2025

_____
UNITED STATES DISTRICT JUDGE

12